UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA GUILFOYLE<br><br>Appellant<br><br>v.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION, U.S. DEPARTMENT OF EDUCATION,<br><br>Appellees. | CASE NO. 1:13-CV-01330 AWI<br><br>ORDER RE: APPEAL |

**I. Background**

Appellant Sonia Guilfoyle took out federally-funded student loans to help pay for her associate's and bachelor's degrees in nursing.  In 2008, Appellant sustained injuries to her neck, back, and shoulders while working as a travel nurse.  As a result of her injuries, Appellant began receiving worker's compensation.  Her injuries were deemed permanent.  She has not worked or applied for work since the injury.

Appellant filed for Chapter 13 bankruptcy in 2008.  The bankruptcy was converted to Chapter 7 in 2009.  She received a discharge on May 10, 2011, but the student loans at issue were excluded from that discharge.  On September 6, 2011, Appellant, pro se, filed an adversary action to have the student loans discharged under 11 U.S.C. §523(a)(8).  On July 19, 2013, the bankruptcy court heard evidence and arguments from both parties and issued oral Findings of Fact and Conclusions of Law on August 1, 2013. Doc. 16-1, Supplemental Excerpts of Record on Appeal by Appellee U.S. Department of Education ("SER"), 125-136.  The Bankruptcy Judge found that the debt was not dischargeable and judgment was entered on August 6, 2013. Doc. 1-2.

Appellant appealed the judgment.  Appellees Educational Credit Management Corporation

and the United States Department of Education ("US DOE") elected to have the matter head before a district court judge.

## II. Legal Standard

A district court reviews de novo a bankruptcy court's conclusions of law. Paulman v. Gateway Venture Partners III, 163 F.3d 570, 575 (9th Cir. 1998).  Findings of fact by the bankruptcy judge shall not be disturbed unless they are clearly erroneous. Fed. R. Bankr. Proc. 8013.  A factual determination is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).  "Mixed questions of law and fact are reviewed de novo. Such a question arises when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule." In re OTA, 179 B.R. 149, 155 (B.A.P. 9th Cir. 1995).

## III. Discussion

**A. Issues on Appeal**

Student loans may not be discharged "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).  The Second Circuit ratified a three part test crafted by the Southern District of New York for determining what constitutes an "undue hardship": a debtor has the burden of establishing "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2nd Cir. 1987).  The Ninth Circuit has explicitly adopted the Brunner test. In re Pena, 155 F.3d 1108, 1112 (9th Cir. 1998).

The bankruptcy court applied the Brunner test.  In oral findings of fact and conclusions of law, the bankruptcy court found that Appellant had not met her burden in proving the first two

1  prongs and did not address the third prong as the test requires all three to be satisfied in order for
2  Appellant to prevail. SER, 133-134.  Appellant argues that "1) The court used the wrong legal
3  standard adopted by the Ninth Circuit in Brunner. 2) The Court's decision and application of the
4  Brunner test was illogical, implausible, and without support in the record." Doc. 11, Appellant
5  Opening Brief, 27.  Review on appeal of the three prongs is a mixed question of law and fact
6  meriting de novo review. In re Roth, 490 B.R. 908, 916 (B.A.P. 9th Cir. 2013).

**B. Record on Appeal**

In a bankruptcy appeal proceeding, it is the appellant's burden to provide a sufficient record on appeal to meet their burden. In re Gionis, 170 B.R. 675, 681 (B.A.P. 9th Cir. 1994). With respect to transcripts, the Federal Rules of Bankruptcy Procedure states:

> (b) Transcript of proceedings.
>     (1) Appellant's duty to order. Within the time period prescribed by subdivision (a)(1), the appellant must:
>         (A) order in writing from the reporter, as defined in Rule 8010(a)(1), a transcript of such parts of the proceedings not already on file as the appellant considers necessary for the appeal, and file a copy of the order with the bankruptcy clerk; or
>         (B) file with the bankruptcy clerk a certificate stating that the appellant is not ordering a transcript....
>     (4) Payment. At the time of ordering, a party must make satisfactory arrangements with the reporter for paying the cost of the transcript

Fed. R. Bankr. P. 8009.  Appellant moved to have to the transcript provided to her at the government's expense and was told by this court that no such provision existed and that she would need to provide the transcript. Doc 8.  Appellant has not provided the transcript as required by Rule 8009.  The Ninth Circuit requires that pro se appellants follow Rule 8009. See In re Drysdale, 248 B.R. 386, 388 (B.A.P. 9th Cir. 2000).  "The absence of the trial transcript, while a handicap, does not preclude us from deciding the appeal. [Appellant] chose to omit the transcript.... The burden is on him, as appellant, to demonstrate that the findings of fact were clearly erroneous. We are entitled to presume that he does not think the trial transcript helpful in that regard." In re Gionis, 170 B.R. 675, 680-81 (B.A.P. 9th Cir. 1994).  Regarding supporting evidence, large portions of Appellant's exhibits appear to be documents that the bankruptcy court excluded from the trial.  The record is extremely problematic and places significant limits on this

appeal.

**C. Excluded Evidence**

Appellant asserts in her appeal that the bankruptcy court failed to allow her to introduce relevant evidence to prove her case. Doc. 11, Appellant Opening Brief, 6-7.  Evidentiary rulings are reviewed for abuse of discretion. Security Farms v. International Bhd. of Teamsters, 124 F.3d 999, 1011 (9th Cir. 1997).  Without a record from a trial or evidentiary hearing, it is unclear what the specific objections were to the various exhibits.  Appellee says that "the court sustained their objections to my evidence on the ground of improper 'authentication.'" Doc. 17, Appellant Reply Brief, 14.  Appellee United States represents that "many of her documents were inadmissible as hearsay." Doc. 16, Appellee US DOE Opening Brief, 23.  Appellant explains

> my exhibits were not allowed into evidence because of my inability to clearly understand the Rules of Evidence and in order to properly introduce evidence. This is a much higher standard than the courts, including the Supreme Court, have required of pro se litigants. 'Courts generally afford pro se litigants special consideration. In Haines v. Kerner, the Supreme Court held that the pleadings of pro se litigants are subject to 'less stringent standards than formal pleadings drafted by lawyers'

Doc. 17, Appellant Reply Brief, 16, citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Pro se parties are given some consideration for presenting arguments in irregular forms, especially at the pleading stage (complaint and answer).  However, pro se parties are expected to fully follow the Federal Rules of Evidence. See, e.g., Reed v. Richards, 1994 U.S. App. LEXIS 14734, *7-8 (7th Cir. June 13, 1994) ("Reed submits that, because he is a pro se litigant, the district court should have overlooked these deficiencies and considered the exhibits. We disagree. While a district court, in considering the allegations in a pro se litigant's complaint, must overlook the fact that the allegations are unartfully pleaded, this does not mean that the court, in considering materials filed in opposition to a motion for summary judgment, should overlook the requirement of Federal Rule of Civil Procedure 56(e) that affidavits be made on personal knowledge and set forth facts as would be admissible in evidence. The 'liberal construction' afforded the pleadings of pro se litigants cannot be used as a mechanism for avoiding federal rules of evidence and civil procedure"); Whiteside v. Edwards, 1998 U.S. App. LEXIS 6061, *5-6 (6th Cir. Mar. 25, 1998)

("Whiteside argues that the district court erred by prohibiting him from developing his case, that the district court made a plethora of improper evidentiary rulings....The judge's comments and rulings did nothing more than maintain control over the proceedings, gave due deference to Whiteside's pro se status, and yet were still within compliance with the Federal Rules of Evidence"); Lioasheng Zhang v. Honeywell Int'l, Inc., 2009 U.S. Dist. LEXIS 90781, *18 (D. Ariz. 2009) ("as a pro se litigant Plaintiff seems to be unfamiliar with the Federal Rules of Evidence, and what constitutes admissible evidence under those rules....Nevertheless, the Court must abide by the law...").

### D. Brunner Test

The first prong of the Brunner test requires the debtor to prove "that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if she were forced to repay the loan." In re Pena, 155 F.3d 1108, 1111 (9th Cir. 1998), citations omitted. The burden is on the debtor to "demonstrate more than simply tight finances." In re Rifino, 245 F.3d 1083, 1088 (9th Cir. 2001). "The proper inquiry is whether it would be unconscionable to require the Debtor to take steps to earn more income or reduce her expenses." In re Nascimento, 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999), citations omitted. Even though evaluation of the overall prong is done on a de novo basis, "[t]he method for calculating a debtor's average monthly income and expenses is a matter properly left to the discretion of the bankruptcy court." In re Whitman, 2012 WL 1085473, *9 (E.D. Cal. Mar. 29, 2012), citing In re Pena, 155 F.3d 1108, 1112 (9th Cir. 1998).

Appellant argues the bankruptcy court erred in finding that she had sufficient income to pay her student loans and maintain a minimal standard of living. Again, without an adequate record on appeal, the court does not have access to the materials that may (or may not) support the bankruptcy court's ruling. In general, "an attempt to reverse the trial court's findings of fact will require the entire record relied upon by the trial court be supplied for review." In re Burkhart, 84 B.R. 658, 661 (B.A.P. 9th Cir. 1988).

This court can only look at a more general objection of pure law. Specifically, Appellant

argues "The Court made no calculation as to the amount of the debt that I would have to repay, it used $65.00/month which is a meaningless amount based on nothing. It was a misquoted figure by USDOE because I could not pay that consolidation and the loan went into default when I filed bankruptcy....The Court minimized the current amounts due to ECMC and the USDOE when it had the actual figures....if there would be a balance after the repayment period[,] I would have to pay income taxes on [any loan forgiveness.]" Doc. 11, Appellant Opening Brief, 26.  As explained in her deposition, Appellant took part in an Income Contingent Repayment Plan ("ICRP") which reduced her monthly payments to $65.64 per month. SER, 87.  ICRP allows the repayment amount to change in response to increases or declines income and provides for loan forgiveness after a period of 25 years; "The borrower's aggregate monthly loan payments are limited to no more than 10 percent of the amount by which the borrower's AGI exceeds 150 percent of the poverty guideline applicable to the borrower's family size, divided by 12." 34 C.F.R. §685.209(a)(2)(i). The bankruptcy court used the ICRP figure as the amount Appellant had to pay each month to "repay the loan" under the first prong of <u>Brunner</u>.

One bankruptcy court opinion could be read to suggest that use of the ICRP monthly payment in evaluating this prong is improper and that doing so would undermine 11 U.S.C. § 523(a)(8):

> THE STANDARDS FOR UNDUE HARDSHIP DIFFER FROM THE STANDARDS FOR COMPLIANCE WITH ICRP
>
> Not only is the relief under the Bankruptcy Code different from the relief granted by the Department of Education, the standards used to assess whether the relief is appropriate also differ.
>
> Under the first prong of the <u>Brunner</u> test, the debtor must demonstrate that she cannot maintain a minimal standard of living at the present time if required to repay the loan. This burden requires more than a simple mathematical calculation of income minus expense. The court must consider whether it would be unconscionable to require the debtor to reduce expenses or acquire more income in order to make payments in an amount which would be reasonably sufficient to service part or all of the obligation. In reaching a conclusion as to whether undue hardship exists, the court considers the reasonableness or necessity of all expenses including private school tuition for children, the type of vehicle driven by the debtor and payment required for it, and personal expenses such as clothing and tanning salons. Comparisons are made with expenses allowed under Chapter 13 Trustee guidelines for debtor's expenses as well as IRS guidelines. As to the income side of the equation, bankruptcy courts do not just compare a debtor's household income to federal poverty level guidelines. Rather, bankruptcy courts

> consider, in both the first and third prong of the Brunner test, whether the debtor historically has maximized, or in the future will be able to maximize income. Undue hardship under the Bankruptcy Code is determined at the time of hearing based upon the evidence which then exists and that determination is final.
>
> Unlike undue hardship which requires a case-by-case analysis, application of ICRP is determined by a formula. Application of ICRP is an administrative procedure subject to the administrative rule-making process. Calculations under the formula, such as percentage of adjusted gross income, may change on an annual basis. Application of ICRP and the determination of the appropriate monthly payment repeats on an annual basis for as long as 25 years. In contrast with the Bankruptcy Code's determination of an ability to repay, the formulaic administrative process does not consider the reasonableness of a debtor's expenses nor the ability to maximize income. Thus, issues required to be addressed under the first prong of the Brunner test, are not considered in the administrative process.
>
> ICRP SHOULD NOT OPERATE TO REPEAL 11 U.S.C. § 523(a)(8)
>
> A debtor's participation in ICRP is relevant to much of the analysis conducted by a bankruptcy court to determine if undue hardship exists. However, this current motion is limited to determining as a matter of law, if a zero monthly payment plan under ICRP prevents a debtor from demonstrating an inability, based on current circumstances, to repay a student loan obligation. Granting this motion would replace a court's conclusion regarding permanent relief from the underlying obligation with an administrative agency conclusion that repayment of a debt should be deferred. Terrence L. Michael & Janie M. Phelps, Judges?! - We Don't Need No Stinking Judges!!!: The Discharge of Student Loans In Bankruptcy Cases And The Income Contingent Repayment Plan, 38 Tex. Tech L. Rev. 73 (2005).
>
> Holding that an administrative decision to temporarily defer monthly repayments precludes application of the statutory undue hardship standards usurps the Bankruptcy Code. It destroys the jurisdiction of the bankruptcy court and would not allow any exercise of discretion by a bankruptcy judge. Granting the defendants' motion would effectively replace a statutory case-by-case analysis potentially relieving a debtor from liability with an administrative formula which potentially defers liability.

In re Booth, 410 B.R. 672, 676-77 (Bankr. E.D. Wash. 2009), citations omitted.  Another bankruptcy court reasoned that while not dispositive, the ICRP payment amount may be considered under the first Brunner prong:

> The Court agrees with Ms. Greene's argument in her Brief that participation or eligibility to participate in the Income Contingent Plan should not constitute a per se rule precluding discharge of student loans under Section 523(a)(8). However, as the Fourth Circuit Court of Appeals taught in Frushour, the existence of and opportunity to participate in the Income Contingent Plan is properly considered as a factual circumstance in the application of the Brunner test to a given debtor's case.
>
> ....
>
> While mindful of the sage advice not to assume participation in the Income Contingent Plan ipso facto prevents satisfaction of the Brunner test, it appears equally inappropriate to ignore the present fact that the repayment of Ms. Greene's Student Loan has no effect whatsoever on her ability to maintain a minimal

> standard of living for herself and her dependent. In other words, in light of the present circumstances, denying the discharge of Ms. Greene's Student Loan, with its prescribed monthly zero payment, would not cause Ms. Greene to be unable to maintain a minimal standard of living. As Judge Mitchell commented in the context of a Chapter 13 debtor who declined to pursue the Income Contingent Plan, which would have resulted in a prescribed student loan payment of zero, it is illogical to conclude that a payment of zero could be an undue hardship: 'The debtor's justification in refusing the [Income Contingent Plan] loan repayment program is not that the monthly payments of zero would pose a hardship (which indeed it could not)....'
>
> In the context of the first Brunner prong, Ms. Greene also raises the issue of potential tax consequences if the Student Loan is forgiven under the Income Contingent Plan, contending that the amount for given would be treated as taxable income at the end of the twenty-five (25) year term of the Student Loan. In contrast, the United States asserts that if the Student Loan was written off by the Department of Education under current tax laws, Ms. Greene would realize no tax consequences from this action pursuant to the insolvency exception. Under the insolvency exception, the United States argues, Ms. Greene would only realize income from the cancelled debt to the extent the value of her assets exceeded her liabilities. The United States further argues that consideration of the potential tax consequences were the Department of Education to cancel the debt attributable to the Student Loan at the end of the twenty-five (25) year period is too speculative.... Ms. Greene's circumstances likewise present the Court with a situation where the potential tax implications are too speculative to influence the determination of dischargeability of the Student Loan.

In re Greene, 484 B.R. 98, 115-18 (Bankr. E.D. Va. 2012), citations omitted. Other courts have also permitted consideration of the ICRP payment amount. See In re Geyer, 344 B.R. 129, 133 (S.D. Cal. 2006) ("Excluding the student loans from discharge does not impose any hardship on Debtors, since, by virtue of the Income Contingent Repayment Plan, they are not required to make any payments at all. Accordingly, they cannot show that they cannot maintain a minimal standard of living if the loans are not discharged").

On balance, the approach in Greene makes sense. The ICRP amount is based on poverty guidelines, which are not identical to the "minimal standard of living" used for the Brunner test which examines each debtor's specific circumstances. See In re Rifino, 245 F.3d 1083, 1088 (9th Cir. 2001) (accepting a budget which included tanning, cable television, and a new car). Thus the ICRP does not substitute for the Brunner test. However, that is no reason to conclude that the ICRP payment amount should not be accepted as the proper amount expected of a debtor to repay the student loan. Booth expresses concern that the US DOE would be able to change the amount of the payment in the future, outside of the review of a bankruptcy court. However, finding that an ICRP plan could be an undue hardship in the future would require speculation concerning

8

future incomes and expenses of a debtor. Courts have repeatedly refused to engage in such speculation when a debtor is found to be able to currently afford a payment. See <u>Hansen v. Sallie Mae Inc.</u>, 2014 WL 4057185, *3 (W.D. Wash. Aug. 14, 2014). Similarly, it would be far too speculative to make a determination as to the potential tax consequences of loan forgiveness years if not decades later. See <u>In re Healy</u>, 2010 WL 2650438, *3 (Bankr. N.D. Cal. June 30, 2010) (court refuses to speculate on tax debt upon forgiveness of debt).

The bankruptcy court's use of the ICRP amount as part of the analysis of the <u>Brunner</u> test was not legal error.

## IV. Order

The Bankruptcy Court's decision is AFFIRMED.

IT IS SO ORDERED.

Dated: __March 25, 2015__                    _____
                                              SENIOR DISTRICT JUDGE